UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **DWIGHT WHATLEY**, | ) | Case No. 1:08 CV 1632 |
| | ) | |
| Petitioner, | ) | Judge Sara Lioi |
| | ) | |
| vs. | ) | REPORT AND RECOMMENDATION |
| | ) | OF MAGISTRATE JUDGE |
| **KEITH SMITH, WARDEN** [1] | ) | (Regarding ECF #1) |
| | ) | |
| Respondent. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Dwight Whatley was convicted by a jury on March 11, 2005, of 4 counts of aggravated murder, 2 counts of attempted aggravated murder, 2 counts of aggravated burglary, six counts of aggravated robbery and 3 counts of kidnapping. His original charges carried a death penalty specification, but following a mitigation hearing, the jury recommended a life sentence on the capital offenses. After trial, Whatley was sentenced to 2 consecutive life terms without the possibility of parole plus an additional 30 years which under the circumstances amounts to surplusage. See *State v. Whatley*, 2006 WL 1351668 at *3, 2006-Ohio-2465 (Ohio App. 8 Dist.). Whatley followed with an appeal, which included a challenge to his sentence. The state appellate court found that this assignment of error was mooted by the fact that re-sentencing was required due to the intervening decision from the Ohio Supreme Court in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006 - Ohio - 856 (2006), *cert. denied*, 549 U.S. 979 (2006). Whatley was resentenced in November 2006 to the same sentence. See *State v. Whatley*, 2008 WL 192490 at *1, 2008-Ohio-225 (Ohio App. 8

---

[1] The petition identifies the respondent as Stuart Hudson, Warden, but respondent in his answer identifies himself, as Keith Smith, the current warden at Mansfield Correctional Institution, where Mr. Whatley is housed. The sole proper respondent is the person with the ability to produce the petitioner's body before the habeas court. See *Rumsfeld v. Padilla*, 542 U.S. 426, 434-35, 124 S.Ct. 2711, 159 L.Ed.2d 513 (2004). Accordingly, Keith Smith is substituted as the proper respondent pursuant to Fed. R. Civ. P. 25.

1:08 CV 1632                                  2

Dist.).  Whatley has since exhausted his state court appeals with pursuit of his remedy under Ohio

R. App. P. 26(B) to reopen appeal and an appeal from his November 2006 re-sentencing. See *State*

*v. Whatley*, 2006 WL 3095691 (Ohio App. 8 Dist.); *State v. Whatley*, 2008 WL 192490 (Ohio App.

8 Dist.), *appeal not allowed,* 118 Ohio St. 3d 1435, 887 N.E. 2d 1203 (Table 2008)(respectively).

Whatley now appears before this federal district court under 28 U.S.C. §2254 with  the following

eight grounds for federal habeas corpus review:

> **GROUND NO. 1**: The Trial Court[']s failure to conduct a hearing on the Petitioner's
> Motion for *Voir Dire* of the State's Eyewitness.

> **GROUND NO. 2**: Ineffective Assistance of Trial Counsel. Trial counsel was
> ineffective in violation of petitioner's Sixth and Fourteenth Amendment rights under
> the United States Constitution after they failed to object to the hearsay testimony that
> improperly bolstered the identification of the petitioner by each civilian witness who
> identified him.

> **GROUND NO. 3**: Ineffective Assistance of Trial Counsel.  Counsel was ineffective
> under the Sixth and Fourteenth Amendments of the United States Constitution when
> they failed to obtain a psychologist or psychiatrist in violation of ABA guideline 10.4
> and Federal case law.

> **GROUND NO. 4**: Ineffective Assistance of Appellate Counsel. The petitioner was
> denied the effective assistance of appellate counsel on direct appeal when, A).
> counsel failed to raise the issue of misconduct by the prosecutor, B). failed to
> properly raise the ineffective assistance of trial counsel issue, and C). failed to raise
> the issue of the trial court not following the proper legal procedures for instructing
> the jury in a capital case.

> **GROUND NO. 5**: The cumulative errors deprived the petitioner of due process
> under the Fourteenth Amendment of the United States Constitution.

> **GROUND NO. 6**: The petitioner was denied due process of law and procedural due
> process of law when the clerk of courts office neglected to provide him with a copy
> of the court of appeals journal entry and/or opinion on his application for reopening
> of appeal.

> **GROUND NO. 7**: Petitioner's sentences of life without parole for a nineteen year
> old offender with no felony record, who was acquitted of being the principle offender
> is disproportional to the sentences imposed on the co-defendant's and violated the

1:08 CV 1632                                  3

Eighth Amendment of the United States Constitution as cruel and unusual punishment.

**GROUND NO. 8**: Petitioner was deprived of due process when he was sentenced under a substantially altered and retroactively applied statutory framework.

*State Appellate Courts Findings of Fact:*

"On habeas review, the state court of appeals's findings of fact must be presumed correct, and can only be discredited if the petitioner can show, by clear and convincing evidence, that the state court's findings were erroneous. 28 U.S.C. § 2254(e)(1)." *Mitzel v. Tate,* 267 F.3d 524, 537 (6th Cir. 2001). The state appellate court's overview of the facts presented at Whately's trial demonstrates no fundamentally unfair trial:

{¶ 4} Whatley's convictions result from an incident that occurred on the night of March 18, 2004 at a combination delicatessen/convenience store with a connected residence located at the corner of East 79th Street and Central Avenue in Cleveland, Ohio. The store owner, Arman Howard Lovett, his live-in girlfriend, Carolyn Pitts, and their employee-boarder, Jeffrey Burton, all were present on the premises.

{¶ 5} Pitts worked that night at the store counter when she took a food order for a young man later identified as Daniel Grant. While she prepared the order, she noticed that Grant left. Grant returned a few minutes later in the company of four other men, one of whom was Whatley; Pitts knew Whatley as "Fats."

{¶ 6} Pitts started a conversation with Whatley as she finished preparing Grant's sandwich, but her remarks were interrupted when one of the others called out an order for "everybody [to] put your hands up." She looked up to see that the three other men had donned ski masks, and that they, Grant and Whatley all held guns in their hands. Whatley carried a shotgun.

{¶ 7} The five men gathered Pitts, Lovett and Burton and forced the captives out to the patio area of the premises, where they each were laid on the ground to be bound hand and foot with duct tape. Pitts had a coat placed over her head. Thereafter, she heard some of the assailants running; they sought valuables in the store and the

1:08 CV 1632                                      4

residence, since one of them demanded of Lovett the location of keys and the combination to a safe.

{¶ 8} In spite of Lovett's apparent compliance, Whatley urged Pitts to tell him where Lovett kept all his money. He emphasized his sincerity by firing his shotgun into the concrete floor. Since he appeared to be the leader of the group, Pitts told him Lovett did not have much money, and asked him to spare her life. Whatley replied without emotion that he had to kill her because she recognized him.

{¶ 9} Eventually, all of the captives were removed to the basement of the residence. As they lay on the floor, one of the assailants wondered "What [they were] going to do with them?" Someone answered, "Let's just do them."

{¶ 10} From under the fabric that had been placed haphazardly over her head, Pitts saw one of the masked men use a steak knife to slice at Burton's throat. When that method did not succeed in killing Burton, another man fired a bullet into his head; Lovett also was murdered with one shot in the head. Observing these shootings, Pitts placed her hands over her head before her turn came. Although she felt a shot strike her, the bullet's force became dissipated as it passed through her hand, the fabric, and her skull; thus, Pitts did not receive a fatal wound.

{¶ 11} Pitts waited until she believed the assailants were gone before she rose and summoned the police. When the police arrived, Pitts told them that one of the men responsible for the incident was "Fats;" she did not know Whatley's real name.

{¶ 12} Officers followed tracks left in the snow that led to the backyard of a residence located at 2363 East 77th Street. Along the route, the officers found some of Lovett's papers and lesser valuables. Moreover, beneath a van parked in the driveway of the residence, officers discovered five weapons; one was a shotgun. Additionally, two of the handguns that were found proved, respectively, to have fired the fatal shots into Lovett and Burton, and to have fired the shot into Pitts' head.

{¶ 13} At Whatley's trial, James Chalklett testified that on the day prior to the incident, Whatley came to Chalklett's apartment carrying a shotgun which Whatley requested to leave overnight. The following evening, Whatley returned with two other men, proceeded into a bedroom, and, subsequently, another two men arrived to join them. Curious, Chalklett looked into the room; he saw Whatley handling two handguns. Chalklett identified these guns as two of the weapons that were later

recovered from underneath the van. Chalklett further testified that Whatley asked for his shotgun before the five men left together.

{¶ 14} Similarly, Joanna Workman, who lived at 2363 East 77th Street, testified that on the night of the incident, she admitted into her home two men who were friends of her cousin just before she heard shots fired nearby. Within minutes, Whatley and another man came to her door. Workman demanded that all four of them go.

{¶ 15} Tyshaun Hampton testified that on the night of the incident he received a telephone call from an acquaintance, who asked him to come to 2363 East 77th Street to give him a ride. When Hampton arrived, he saw that his acquaintance was in the company of four other men, one of whom was Whatley. They placed a metal box into the trunk of Hampton's vehicle before he took them to another location. Hampton later watched as the men broke into the box, which contained approximately $3,500.00 in cash. Whatley seemed unhappy with the amount. Subsequently, Hampton drove his passengers to a place where they burned the clothing they had been wearing.

{¶ 16} Approximately three weeks after the incident, Whatley was indicted on seventeen counts, as follows: Counts 1-4, aggravated murder, each with two firearm specifications, three felony murder specifications, two mass murder specifications, and three murder to escape prosecution specifications; Counts 5 and 6, attempted aggravated murder, Counts 7 and 8, aggravated burglary, Counts 9-14, aggravated robbery, and Counts 15-17, kidnapping, each with two firearm specifications.

{¶ 17} Whatley received the assistance of assigned counsel to represent him in his capital punishment case. His case ultimately proceeded to a jury trial. After hearing the testimony and considering the evidence presented by the state, the jury found Whatley guilty on all counts. As to the underlying felony murder specifications attached to Counts 1 through 4, the jury determined Whatley had not been the principal offender but had committed the offenses with prior calculation and design.

*State v. Whatley,* 2006 WL 1351668, at *1 -3.

Federal habeas corpus is "an extraordinary remedy and 'will not be allowed to do service for an appeal.'" *Bousley v. U.S.*, 523 U.S. 614, 621, 118 S.Ct.1604, 140 L.Ed.2d 828 (1998)( quoting

1:08 CV 1632                                                6

*Reed v. Farley*, 592 U.S. 339, 354, 114 S.Ct. 2291, 129 L.Ed.2d 277 (1994)). It is obvious, though, that Whatley's *pro se* petition seeks just that- another appeal but outside the state forum. Whatley's arguments are not focused on U.S. Supreme Court precedent.


**Ground No. 1** *Trial Court's Failure to Conduct Suppression Hearing:*

In his first ground  Whatley is challenging his conviction because the state trial court failed to hold  a suppression hearing. In Cuyahoga County it is common to use a 2-step procedure of a motion for *voir dire* of identification witnesses accompanying or followed by  a motion to suppress identification testimony pursuant to Ohio Crim. R. P.12 (C)(3).  It is a perilous procedure for defense counsel who move for *voir dire,* but omit the second step of moving to suppress identification testimony. See *State v. Martin*, 2000 WL 86845, at * 7 (Ohio App. 8 Dist.).


The state appellate court found that Whatley had waived the matter of a suppression hearing. Counsel had agreed to hold the motion in abeyance pending the course of trial, and did not raise the matter again.  *State v. Whatley*, 2006 WL 1351668, at * 5, 2006-Ohio-2465 (Ohio App. 8 Dist.). Ohio's Eighth District deferred to its precedential holding from *State v. Veras*, that a motion to *voir dire* witnesses must be renewed after a trial court withholds ruling "until and if" the issue arises at trial. *Id.*, 1999 WL 475846, at *3 (Ohio App. 8 Dist.). This is essentially a matter of failure to move to suppress, which the state courts view as a waiver. See *State v. Campbell*, 69 Ohio St. 3d 38, 45, 630 N.E. 339, 348, 1994-Ohio-492 (1994); *State v Davis*, 76 Ohio St. 3d 107, 113, 666 N.E. 2d

1:08 CV 1632                                7

1099, 1106, 1996-Ohio-414 (1996). [2]  This is an expression of Ohio's contemporaneous objection rule.

Ohio's contemporaneous objection rule is an adequate and independent state rule, so that a defendant who fails to object waives review of the issue both in state review and  federal habeas corpus review absent a showing of cause and prejudice or a fundamental miscarriage of justice. *Nields v. Bradshaw*, 482 F.3d 442, 451 (6th Cir. 207); *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006); *Williams v. Bagley*, 380 F.3d 932, 967-68 (6th Cir. 2004); *Scott v. Mitchell*, 209 F.3d 854, 866-68 (6th Cir. 2000).[3]  Subsequent plain error review by Ohio state courts does not waive this procedural default.  See *Girts v. Yanai,* 501 F.3d 743, 755 (6th Cir. 2007); *Keith*, 455 F.3d at 673; *Williams*, 380 F.3d at 968-69;  *Seymour v. Walker*, 224 F.3d 542, 547 (6th Cir. 2000).   Further, the subsequent unexplained denial of appeal by the Ohio Supreme Court is presumed to rest on the continuation of this procedural default when the state supreme court decision is unexplained.  See *Mason v. Mitchell,* 320 F.3d 604, 635 (6th Cir. 2003) (plain error); *Hinkle v. Randle*, 271 F.3d 239,

---

[2] Davis was tried in Cuyahoga County and following the *voir dire* of identification witnesses,  his counsel failed to renew the motion to suppress evidence following a variance in the testimony from an identification witness at trial. The Ohio Supreme Court cited *Campbell*, which held that the failure to file a motion to suppress waives objection to its admission.

[3]  When it is argued that a ground has been defaulted due to a state procedural rule, a four-part analysis must be performed in order to determine the validity of the state procedural rule that constituted the basis for the alleged procedural default:

> (1) whether there is a procedural rule that is applicable to the petitioner's claim and whether the petitioner failed to follow this rule; (2) whether the state courts actually enforced the state procedural rule; (3) whether the state procedural rule is an adequate and independent state ground to foreclose federal relief; and if so (4) whether the petitioner has established cause for his failure to follow the rule and prejudice by the alleged constitutional error. (citations omitted).

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986).

1:08 CV 1632                                           8

244 (6th Cir. 2001) (plain error).   This presumption carries through notwithstanding the Ohio

Supreme Court's dismissal on the basis of no substantial constitutional question.   See *Levine v.*

*Torvik*, 986 F2d. 1506, 1517 n. 8 (6th Cir. 1993) *cert. denied*, 509 U.S. 907 (1993), abrogated on

other grounds by *Thompson v. Keohane*, 516 U.S. 99 (1995); *Hinkle*, 271 F.3d at 244; and see *Ylst*

*v. Nunnemaker*, 501 U.S. 797, 111 S.Ct. 2590, 115 L.Ed.2d 706 (1991).


"Cause" is a legitimate excuse for the default and "prejudice" is the actual harm resulting

from the alleged constitutional violation. *Jamison v. Collins*, 291 F.3d 380, 386 (6th Cir. 2002). To

establish "cause" a petitioner must present a substantial reason based on "some objective factor

external to the defense ." *Murray v. Carrier*, 477 U.S. 478, 488, 106 S.Ct. 2639, 2645, 91 L.Ed.2d

397 (1986); *Rust*, 17 F.3d at 161; *Ritchie v. Eberhart*, 11 F.3d 587, 591 (6th Cir. 1993), *cert. denied*

510 U.S. 1135 (1994). "Petitioner has the burden of showing cause and prejudice to overcome a

procedural default. *Lucas v. O'Dea*, 179 F.3d 412, 418 (6th Cir.1999) (citing *Coleman*, 501 U.S. at

754, 111 S.Ct. 2546)." *Hinkle v. Randle,*  271 F.3d 239, 245 (6th Cir.2001); and see *Maupin v. Smith,*

785 F.2d 135, 139 (6th Cir.1986).


 Ineffective assistance of counsel may constitute "cause" to excuse a procedural default. See

*Murray v. Carrier*, 477 U.S. at 488, 106 S.Ct. at 2645;  *Strickler v. Greene*, 527 U.S. 263, 283 n. 24,

119 S.Ct. 1936, 144 L.Ed.2d 286 (1999)(same). However, the claim must "be presented to the state

courts as an independent claim before it may be use to establish cause for a procedural default," and

the failure to present it is itself a procedural default.  *Edwards v. Carpenter*, 529 U.S. 446, 452, 120

S.Ct. 1587, 146 L.Ed.2d 518 (2000), Whatley did not raise trial counsel's failure to move to suppress

1:08 CV 1632                                    9

identification testimony as an independent claim to the state courts. Consequently, no "cause" is presented to excuse this default, and federal collateral review of the first ground is barred. [4]

The alternative to cause to excuse a procedural default is a fundamental miscarriage of justice. See *Bonilla v. Hurley,* 370 F.3d 494, 497(6th Cir. 2004); *Coleman v. Thompson*, 501 U.S. 722, 750, 111 S.Ct. 2546, 115 L.Ed.2d 640 (1991). Whatley argues in his traverse that the evidence at trial should have led to his acquittal. To succeed, Whatley would need to present "new reliable evidence. . . that was not presented at trial" *Schlup v. Delo*, 513 U.S. 298, 324, 115 S.Ct. 851, 865, 130 L.Ed.2d 808 (1995); *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 427 (6th Cir. 2003).   "In *Schlup*, the [ Supreme] Court adopted a specific rule to implement this general principle. It held that prisoners asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *House v. Bell,* 547 U.S. 518, 536-37, 126 S.Ct. 2064, 2076 -2077, 165 L.Ed.2d 1 (2006).   Whatley has not produced new evidence as a gateway for federal review, and consequently fails to establish a fundamental miscarriage of justice which resulted in the conviction of one who is actually innocent.

**Ground No. 2** *Ineffective assistance of trial counsel:*

---

[4]    Whatley argues in his traverse that he is entitled to an evidentiary hearing where he can *voir dire* the identification witnesses to establish misidentification. However, defense counsel was satisfied with cross-examination at trial. Moreover, Whatley builds his case based on the trial record and argues that there were inconsistencies with Carolyn Pitts' testimony.  Whatley's speculation that the identification witnesses were tainted by impermissibly suggestive procedures contrary to *Manson v. Braithwaite*, 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977) and *Neil v. Biggers*, 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972), was an argument that could have, but was not raised in state court, and in any event, Whatley does not appear to have suffered prejudice in view of the overwhelming evidence linking him to the crimes.

1:08 CV 1632                                          10

Whatley argues that defense counsel should have objected to the police officer's testimony concerning identification witnesses' selection of a photograph of him from an array. The state appellate court scrutinized Whatley's argument that trial counsel was ineffective for failing to object to hearsay testimony under the two-prong test from *Strickland v. Washington*, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), *i.e.*, objectively unreasonable performance  coupled with establishing prejudice as a result of unprofessional representation. Although, no direct mention of *Strickland* appears in the state court decision, the court refered to *State v. Bradley*, 42 Ohio St. 3d 136 (1989), where the Ohio Supreme Court adopted the federal measure of Sixth Amendment counsel performance claims.  The state appellate court excused defense counsel's failure to object as a correct action, since the testimony was not in violation of Ohio's  evidentiary hearsay rules. *Whatley*, 2006 WL 1351668, at *6-7.


The warden does not contend that the second ground has been procedurally defaulted. Accordingly, this ground must be reviewed, but not as it would have been on appeal, but under federal standards of habeas review. Federal habeas corpus review is conducted under Congressionally circumscribed rules set out in §2254(d) which allow the writ to be granted in situations where the state court decision is "contrary to" or "an unreasonable application" of "clearly established" Federal law as set forth by  the Supreme Court of the United States or when there is an unreasonable determination of the facts.


A state court decision is "contrary to" Supreme Court precedent when either "the state court confronts a set of facts that are materially indistinguishable from a [Supreme Court] decision ... and

1:08 CV 1632                                        11

nevertheless arrives at a result different from [Supreme Court] precedent," or  "'applies a rule that

contradicts the governing law set forth' in those precedents."  *Brumley v. Wingard,* 269 F.3d 629,

638 (6ᵗʰ Cir.2001)(quoting *Williams v. Taylor*, 529 U.S. 362, 405-06, 120 S.Ct. 1495, 146 L.Ed.2d

389 (2000); and see *Lockyer v. Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166, 155 L.Ed.2d 144 (2003).

When the state decision does not identify what legal precedent or standard was used as the

foundation for its decision, a deferential standard of review applies, which liberally states, "that a

state court need not even be aware of all precedents, 'so long as neither the reasoning nor the result

of the state-court decision contradicts them.'" *Mitchell v. Esparza*, 540 U.S. 12, 16, 124 S.Ct. 7, 10,

157 L.Ed.2d 263 (2003), quoting *Early v. Packer*, 537 U.S. 3, 7-8, 123 S.Ct. 352, 154 L.Ed.2d 263

(2000) (*per curiam*).


        Alternatively, a state court decision is an "unreasonable application" of Supreme Court

precedent when the state court identifies the correct governing legal principle from the Supreme

Court's decisions but unreasonably applies that principle to the facts of the prisoner's case. See

*Rompilla v. Beard*, 545 U.S. 374, 380, 125 S.Ct. 2456, 2462, 162 L.Ed.2d 360 (2005); *Williams*, 529

U.S. at 413. Or conversely stated, " a federal court may grant relief when a state court has

misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which

the principle was announced.'" *Wiggins v. Smith*, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 2535, 156

L.Ed.2d 471 (2003)(quoting *Lockyer*, 538 U.S. at 76, 123 S.Ct. at 1175) . The unreasonable

application of Supreme Court precedent must, however,  be "objectively" unreasonable. *Lockyer*,

538 U.S. at 75, 123 S.Ct. at 1174 (citing  *Williams,* 529 U.S. at 410, 412, 120 S.Ct. at 1521-22);

*Wiggins,* 539 U.S. at 520-21, 123 S.Ct. at 2535.  That is, it must be more than incorrect or erroneous.

1:08 CV 1632                                              12

*Ibid.* When the state court has rendered a decision, the federal reviewing court  may not grant the

writ in its "independent review of the legal question." *Lockyer v. Andrade*, 538 U.S. at 75, 123 S.Ct.

at 1174; *Yarborough v. Alvarado*, 541 U.S. 652, 665, 124 S.Ct. 2140, 2150, 158 L.Ed.2d 938 (2004).


The phrase "clearly established Federal law" refers to holdings, as opposed to *dicta,* of the

U.S. Supreme Court at the time of the relevant state court decision.  *Lockyer v. Andrade*, 538 U.S.

63, 71-72, 123 S.Ct. 1166, 1172, 155 L.Ed.2d 144 (2003); *Williams v. Taylor*, 529 U.S. 362, 412,

120 S.Ct. 1495, 1523, 146 L.E.d2d 389 (2000);  *Bell v. Cone*, 535 U.S. 685, 698, 122 S.Ct. 1843,

1852, 152 L.Ed.2d 914(2002). "[I]t is not  'an unreasonable application of clearly established

Federal law' for a state court to decline to apply a specific legal rule that has not been squarely

established by [the Supreme] Court." *Knowles v. Mirzayance.* -U.S.-, 129 S.Ct. 1411, 1419

(2009)(quoting *Wright v. Van Patten*, 552 U.S. ----, 128 S.Ct., 743, 746-47, 169 L.Ed.2d 583 (2008)

(*per curiam*); *Schriro v. Landrigan*, 550 U.S. 465, 478, 127 S.Ct. 1933, 167 L.Ed.2d 836 (2007);

*Carey v. Musladin*, 549 U.S. 70, 76-77, 127 S.Ct. 649, 654, 166 L.Ed.2d 482 (2006).


"Clearly established law" "encompasses more that just bright-line rules laid down by the

[Supreme] Court," and "includes legal principles and standards enunciated in the Court's decisions."

*Awkal v. Mitchell*, 559 F.3d 456, 462 (6th Cir. 2009)(quoting *Taylor v. Withrow*, 288 F.3d 846, 850

(6th Cir. 2002)). As the U.S. Supreme Court has stated that "clearly established" law is "the

governing legal principle or principles set forth by the Supreme Court at the time the state court

renders its decision.*" Lockyer v. Andrade,* 538 U.S. at 71-72, 123 S.Ct. at 1172 - 1173(citing

1:08 CV 1632                                         13

*Williams v. Taylor,* 529 U.S. at 405, 413, 120 S.Ct. 1495; *Bell v. Cone*, 535 U.S. at 698, 122 S.Ct. 1843)). The Supreme Court in *Wright v. Van Patten,* stressed a same test or standard of review criterion. *Id.*, 552 U.S.120, 128 S.Ct.743, 169 L.Ed.2d 583 (2008).  *Wright* involved a question over whether the right to counsel was violated when defense counsel appeared *via* speaker phone at a plea hearing, and that "although the [Supreme] Court articulated the test for inherent prejudice" it had never applied that test before to the circumstances presented.  *Id.*, 552 U.S.120, 128 S.Ct. at 745 (quoting *Musladin*, 549 U.S. at 70, 127 S.Ct. at 654). Thus, the same standard or test used in Supreme Court review plus similar circumstances equals the  squarely established legal principle, hence "clearly established" law.  This dovetails with the Supreme Court's explanation of the "unreasonable application" standard of review as, "a federal court may grant relief when a state court has misapplied a 'governing legal principle' to 'a set of facts different from those of the case in which the principle was announced.'" *Wiggins v. Smith*, 539 U.S. at 520-21, 123 S.Ct. at 2535 (quoting *Lockyer*, 538 U.S. at 76, 123 S.Ct. at 1175).  The appellate decision in *Wright* had erred by misapplying a governing legal principle to distinguishable circumstances.  Hence the circumstances of that case presented both unreasonable application and a lack of clearly established Federal law.

Since the state court decision acknowledged the correct standard of review, it is incumbent on Whatley to show that *Strickland* was applied to the facts of his case in an "objectively unreasonable" manner. *Awkal v. Mitchell*, 559 F.3d 456, 463 (6th Cir. 2009)(citing *Bell v. Cone*, 535 U.S. 685, 699, 122 S.Ct. 1843, 152 L.Ed.2d 914 (2002)).

1:08 CV 1632                                        14

Whatley merely restates his arguments that the testimony was hearsay under the Ohio Rules of Evidence, and claims unfairness. However,  "it is not the province of a federal  habeas court to reexamine state-court determination on state-law questions"  except in extraordinary situations where the error  resulted in a fundamentally unfair trial.  See *Mullaney v. Wilbur*, 421 U.S. 684, 691, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975); *Lewis v. Jeffers*, 497 U.S. 764, 780, 110 S.Ct. 3092, 3102, 111 L.Ed.2d 606 (1990); *Estelle  v. McGuire*, 502 U.S. 62, 67-68, 112 S.Ct. 475, 479, 116 L.Ed.2d 385 (1991); *Pulley v. Harris*, 465 U.S. 37, 41, 104 S.Ct. 871, 874-5, 79 L.Ed.2d 29 (1984); Compare *Lilly v. Virginia,*  527 U.S. 116, 123, 119 S.Ct. 1887, 1893, 144 L.Ed.2d 117 (1999)(Petitioner initially focused on state hearsay law in his challenge to the admission of witness statements, but expressly argued in his opening brief to that court that the admission of the statements violated his Sixth Amendment right to confrontation and  expanded his Sixth Amendment argument in his reply brief ). In federal habeas review, this court "must defer to a state court's interpretation of its own rules of evidence." *Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005)(quoting *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988)); and see *Bradshaw v. Richey*, 546 U.S. 74, 76, 126 S.Ct. 602, 163 L.Ed.2d 407(2005)("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus."). Counsel's failure to object to unobjectionable testimony did not amount to ineffective assistance of counsel. See *Adams v. Smith*, 280 F. Supp. 2d 704, 721 (E.D. Mich. 2003). The state court decision was not an objectively unreasonable application of the test of counsel's performance under the Sixth Amendment.

**Ground No. 3**: *Ineffective Assistance of Trial Counsel:*

1:08 CV 1632                                        15

Whatley contends that trial defense counsel were ineffective for not obtaining funding for a psychiatrist or psychologist to assist in representing him in accordance with ABA Guidelines in Death Penalty cases which mandate that counsel has a duty to obtain mental health assistance for defense of a capital crime. The state appellate court's resolution of this argument is a bit obtuse. The court's reasoning hints at a finding of no prejudice since the jury did not sentence him to death, but the court's conclusion was that counsel' failure to call a mental health expert was reasonable performance in light of the retention of mitigation specialist services. [5] The state court ignored Whatley's argument that the mitigation specialist's role did not include screening him for the presence of mental or psychological disorders.


Whatley is correct that retention of a mitigation specialist is only one part of reasonably professional performance. See *Jells v. Mitchell*, 538 F.3d 478, 493-95(6th Cir. 2008).  The ABA Guideline  requires more:

> C.   As soon as possible after designation, lead counsel should assemble a defense team
>
> by: . . .
>
>> 2.   Subject to standards of the Responsible Agency that are in accord with these Guidelines and in consultation with associate counsel to the extent practicable,

---

[5] Similarly, the record fails to support Whatley's second complaint, presented in his sixth assignment of error, that counsel failed "to obtain the services of a psychiatrist or psychologist to assist in the defense of one charged with a capital crime." Counsel did, indeed, file a motion for the appointment of a mitigation specialist in order to, inter alia, "[c]onduct a psychosocial investigation" of their client. The trial court granted the request. Upon the conclusion of the trial proceedings, the jury ultimately decided Whatley did not deserve the death penalty for his convictions.

Consequently, under the circumstances presented in this case, Whatley cannot demonstrate defense counsels' performance fell below an objective standard of reasonable representation.

*State v. Whatley*  2006 WL 1351668 at *7.

> selecting and making any appropriate contractual agreements with non-attorney team members in such a way that the team includes:
>
> a.      at least one mitigation specialist and one fact investigator;
>
> b.      at least one member **qualified by training and experience to screen individuals for the presence of mental or psychological disorders or impairments**;
>
> c.      any other member needed to provide high quality legal representation. (emphasis supplied).

American Bar Ass'n, *Guidelines for the Appointment and Performance of Defense Counsel in Death Penalty Cases*, Guideline 10.4(C) (rev. ed. Feb. 2003).

The ABA Guidelines for the Appointment and Performance of Counsel in Death Penalty Cases are "guides to determining what is reasonable" performance by defense counsel in capital cases.  See *Rompilla v. Beard*, 545 U.S. at 387 & n. 6, 125 S.Ct. at 2466 & n.6 (quoting *Wiggins v. Smith*, 539 U.S. at 524, 123 S.Ct. at 2537; *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2065). These constitute the "well-defined norms" of investigation into mitigating evidence. See *Wiggins*, 539 U.S. at 524, 123 S.Ct. at 2537. The state court decision made no attempt to weigh this norm supplied under Guideline 10.4(C) with defense counsel's performance, and hence was not a reasonable application of clearly established law according to the U.S. Supreme Court under *Strickland*, *Wiggins* and *Rompilla*.

As a result, the court must engage in *de novo* determination of counsel's effectiveness under the Sixth Amendment standard of review. See *Wiggins*, 539 U.S. at 531, 123 S.Ct. at 2540. Defense counsel's performance in this capital case was deficient. There is no justification for

1:08 CV 1632                                    17

defense counsel's failure to file a request for funds to obtain a mental health expert to screen

Whatley for possible mental disorder or impairment. The "psychosocial investigation" by the

mitigation specialist was no substitute.


However, Whatley cannot show actual prejudice. "To show ineffective assistance during

the penalty phase of a capital trial, a defendant must show a 'reasonable probability that, absent

the errors, the sentencer ... would have concluded that the balance of aggravating and mitigating

circumstances did not warrant death'" *Murphy v. Ohio,*  551 F.3d 485, 496 (6th Cir.2009)(quoting

*Slaughter v. Parker*, 450 F.3d 224, 234 (6th Cir.2006) (citing *Strickland*, 466 U.S. at 669, 104

S.Ct. 2052).  The sentencer did conclude that the mitigating factors did not warrant death, and

therefore, Whatley was not prejudiced by counsel's deficient performance.


 **Ground No. 4:** *Ineffective Assistance of Appellate Counsel:*

The warden contends that this ground has been defaulted for Whatley's failure to perfect

an appeal to the Ohio Supreme Court from the state appellate court's denial of his Ohio R. App.

P. 26(B) application to reopen appeal where Whatley presented his argument that appellate

counsel had rendered ineffective assistance.  See *State v. Whatley*, 2006 WL 3095691, 2006-

Ohio-5717 (Ohio App. 8 Dist.).  Whatley never filed a correct notice of appeal with

memorandum in support of jurisdiction with the Ohio Supreme Court Clerk.

1:08 CV 1632                                18

On August 10, 2006 Whatley filed an application to reopen appeal pursuant to Ohio R.

App. P. 26(B), which the state appellate court denied on October 31, 2006. (See Warden's Ex.

14-16). Whatley had until December 15, 2006 to appeal. (See Petitioner's Ex. C-2, letter from

Ohio Supreme Court Clerk). Whatley, however, had  received notice of the denial from the state

appellate court clerk of court *via* postcard. To appeal to the  Ohio Supreme Court he was

required to include "[a] date-stamped copy of the court of appeals opinion and judgment entry

being appealed," that is, the journal entry described in Ohio R. App. P. 22(E). See Ohio S.Ct.

Prac. R. III §1(D). He understood that a copy of the postcard was insufficient as he sent a letter

to the Ohio Public Defender's Office dated November 6, 2006, explaining his predicament over

the fact that the state appellate court only sent him a postcard, and without a copy of that ruling

he could not prepare his appeal. (Petitioner's Ex. B). A public defender did not respond until

December 27, 2006, well after the December 15, 2006 filing deadline. (Petitioner's Ex. D, letter

from Chief Counsel, Legal Division).  However, judicial notice may be taken of public records.

See FRE 201; *Jackson v. City of Columbus*, 194 F.3d 737 (6th Cir. 1999), abrogated on other

grounds *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002).  On November 9, 2006 Whatley

appeared with counsel and a public defender in the matter of a presentence report prior to

resentencing. See http://cpdocket.cp.cuyhogacounty.us. public record.  Whatley was again in

court with counsel on November 16, 2006, for resentencing, and he was not returned to

Mansfield Correctional Institution until December 26, 2006.


During the interim, on December 11, 2006, he filed his notice of appeal with the Ohio

Supreme Court listing Mansfield Correctional Institution as his address (Petitioner's Ex. C-3).

1:08 CV 1632                                    19

On December 11, 2006 the clerk of that court informed Whatley by letter addressed to him at

Mansfield Correctional Institution, that postcard notifications were not sufficient to satisfy the

requirement of a date-stamped copy of the court of appeals opinion and judgment entry attached

to the memorandum in support of jurisdiction.  Whatley was informed that a notice of appeal,

"*corrected*" memorandum in support of jurisdiction, affidavit of indigency and case information

statement were due 4 days later. (Petitioner's Ex. C-2). Whatley did not succeed in timely

perfecting his appeal, and of course, delayed appeal in unavailable from an application to reopen

appeal. [6]  A failure to fairly present the federal grounds to the state's highest court constitutes an

adequate and independent state procedural rule barring habeas review.  See  *Leroy v. Marshall*,

757  F.2d 94, 99 (6th Cir. 1985), *cert. denied*, 474 U.S. 831 (1985); *Rust v. Zent*, 17 F.3d 155,

160 (6th Cir. 1994); *Lordi v. Ishee*, 384 F.3d 189, 194 (6th Cir. 2004), *cert. denied* 546 U.S. 821

(2005).


        The question then is whether Whatley had cause to excuse the procedural default from

his rejected notice of appeal. Cause is something external to the petitioner. See *Maples v. Stegall*,

340 F.3d 433, 438 (6th Cir. 2003). Whatley's appeal was unassisted by counsel, but he did have

counsel available to him through contemporaneous resentencing procedures.  He was aware of

the requirement to include a dated copy of the opinion and judgment entry but chose not to

request a copy of the opinion from prior or current counsel. He states that he requested a copy

---

        [6]  Ohio Supreme Court Rule of Practice II §2(A)(4)(b) reads: "The provision for delayed appeal applies to
appeals on the merits and does not apply to appeals involving post conviction relief, including appeals brought pursuant
to *State v. Murnahan* (1992), 63 Ohio St.3d 60, and App. R. 26(B)."  This rule bars delayed appeal from an application
to reopen.  See *State v. Walker*, 2001 WL 1167158 (Ohio App. 8th Dist.).

1:08 CV 1632                                        20

from the court, but no such request is journalized on the appellate court's docket, and Whatley

has produced no letter to confirm this request, although he has produced copies of

correspondence with the Ohio Public Defender's Office.


Further, the fact that his application to reopen was prosecuted *pro se* is not cause to

excuse the procedural default.  In order to constitute "cause" to excuse a procedural default,

there must be a constitutional right to assistance of counsel in the state proceeding.  See

*Coleman*, 501 U.S. at 752, 111 S.Ct. at 2566.  There is no right to counsel beyond the first appeal

as of right.  See *Ross v. Moffitt*, 417 U.S. 600, 610, 94 S.Ct. 2437, 481 L.Ed.2d 341 (1971);

*Halbert v. Michigan*, 545 U.S. 605, 125 S.Ct. 2582, 2583, 162 L.Ed. 2d 552 (2005).

Consequently, Ohio R. App. P. 26(B) proceedings are excluded.  See *Lopez v. Wilson*, 426 F.3d

339 (6th Cir. 2005) (*en banc*), *cert. denied*, 547 U.S. 1099 (2006). While Whatley has not

demonstrated cause to excuse his failure to appeal on the basis of ineffectiveness of counsel, he

does under Ground No. 6 contend that the state process was unconstitutional for inconveniencing

the appeal process. However, as discussed under that ground there was no denial of due process.

Consequently, federal review is barred due to the lack of presentation of this ground to the Ohio

Supreme Court.


**Ground No. 5:** *Cumulative Errors:*

Whatley argues that cumulative errors deprived him of due process. He is vague on what

these errors were, but the state appellate decision interpreted this as an aggregation of his

1:08 CV 1632                                             21

assignments of error. See *Whatley*, 2006 WL 1351668 at *8. The state appellate court ruled in

view of its prior disposition of the assignments of error, the cumulative error argument lacked

merit. *Id.* Whatley does not argue that the state court misinterpreted his claim.


The state court's disposition of this claim was neither contrary to nor an unreasonable

application of clearly established Federal law.   No clearly established law from the U.S.

Supreme Court has been promulgated on the accumulated effect of trial errors. See *Williams v.

Anderson*, 460 F.3d 789, 816 (6th Cir. 2006); *Moore v. Parker*, 425, F.3d 250, 256 (6th Cir.

2005).[7]


**Ground No. 6:** *Postcard substituted for copy of decision:*

Whatley argues that the state appellate court should have  never sent him postcard notice,

but an actual copy of its  journal entry denying his Ohio R. App. P. 26(B) application to reopen

appeal. This inconvenience constituted a denial of due process, in his view. This sixth ground is

new, and has not been presented to the state courts in any proceeding. The warden does not rely

on the lack of fair presentation to the state courts as a basis for procedural default, and

consequently has waived disposition of this ground by  procedural default. See *Slagle v. Bagley*,

457 F.3d 501, 514 (6th Cir. 2006).

---

[7]    *De novo* cumulative error review may occur when there has been no state court decision on the cumulative error claim and the default has been waived, as in *Getsy v. Mitchell*, 495 F.3d 295, 317 (6th Cir. 2007). In *Getsy*, under the assumption that cumulative error could form a basis for relief under §2254, the cumulative error claim failed "because there are simply no errors to cumulate." *Id.* (citing *Baze v. Parker*, 371 F.3d 310, 330 (6th Cir. 2004).

1:08 CV 1632                                          22

The warden argues that this ground concerns Whatley's application to reopen appeal, and as such is non-cognizable, citing *Kirby v. Dutton*, 794 F.2d 245, 247-48 (6th Cir. 1996) and *Lopez v. Wilson*, 426 F.3d 339 (6th Cir. 2005).  Because there has been no state court decision on this issue, the federal reviewing court must examine this ground *de novo* and without the constraints imposed under 28 U.S.C. §2254(d). See *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003); *Howard v. Bouchard,* 405 F.3d 459, 467 (6th Cir. 2005), *cert. denied*, 126 S.Ct. 1032 (2006); *Cristini v. McKee,* 526 F.3d 888, 897 (6th Cir. 2008) and see *Wiggins v. Smith*, 539 U.S. 510, 534, 123 S.Ct. 2527, 2542, 156 L.Ed.2d 471 (2003).

The Sixth Circuit's decision in *Kirby* held that Ohio's collateral post-conviction proceedings under Ohio Rev. Code §2953.21 were civil, not criminal, and  "that relief may not be granted to a habeas petitioner for alleged deficiencies in a state's post-conviction procedures because such claims relate to a state civil matter, not custody of a defendant." *Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002); *Kirby*, 794 F.2d 246 n.1. Without question post-conviction proceedings in Ohio under Ohio Rev. Code §2953.21 are civil proceedings, and the Ohio Supreme Court has declared them as such.  See *State v. Calhoun*, 86 Ohio St.3d 279, 281, 714 N.E.2d 905 (1999); *State v. Steffen*, 70 Ohio St.3d 399, 410, 639 N.E.2d 67 (1994)). *Kirby* declared that since there is no right to counsel in Ohio's post-conviction review, there can be no claim of ineffective assistance of counsel due to counsel's missteps in prosecuting a state post-conviction petition though Ohio's courts. Likewise,  *Roe* declared that there is no judicial review under federal habeas corpus for a clerical error in an Ohio post-conviction proceeding which prevents appeal from the trial court to the state appellate court. *Roe*, 316 F.3d at 571.

1:08 CV 1632                                 23

However, Whatley was not prosecuting a state post-conviction petition, but an

application to reopen appeal under Ohio R. App. P. 26(B).  For the warden's argument to

succeed, the warden must establish that an application to reopen appeal is also a civil

proceeding, as were state post-conviction proceedings at issue in *Kirby* and *Roe*. The Sixth

Circuit's decision in *Lopez* does not directly establish that proceedings in application to reopen

appeals due to ineffective assistance of appellate counsel are civil in nature.  *Lopez* resolved an

issue which had consterned both the federal district courts in Ohio and the Sixth Circuit-

whether applications to reopen are part of the direct criminal appeal, or are collateral matters.

The Sixth Circuit's decision in  *Lopez* followed certification of a question to the Ohio Supreme

Court in *Morgan v. Eads,* 104 Ohio St. 3d 142, 818 N. E.2d 1157 (2004), "Is an application to

reopen an appeal under Ohio Rule of Appellate Procedure 26(B) part of the direct appeal from a

judgment of conviction?"  *Lopez*, 426 F.3d at 344 n. 3; and see *Morgan*, 104 Ohio St. 3d at 142,

818 N.E.2d 1158.  The question finally certified differed from the question originally

contemplated of "whether a Rule 26(B) motion to reopen is properly characterized as a **civil**,

post-conviction proceeding (emphasis supplied)." *Lopez v. Wilson*, 355 F.3d 931, 942 (6th Cir.

2004), *overruled* , 426 F.3d 339. That being said, however, the Sixth Circuit repeated statements

made by the Ohio Supreme Court in *Morgan* that it had characterized  applications to reopen

appeal as "civil, post-conviction matters." The Sixth Circuit did not lean on these statements

because the pertinent issue was not whether these proceedings were civil or criminal matters, but

only whether they were a part of the direct appeal or collateral to that appeal.  See *Lopez*, 426

F.3d at 344 n. 3; *Morgan*, 104 Ohio St. 3d at 142, 818 N.E.2d at 1158.   Nonetheless,  it would

be unwise to ignore the statements from *Morgan v. Eads*, as noted in *Lopez*, that an application

1:08 CV 1632                                        24

to reopen appeal is a civil proceeding.  See *Lopez*, 426 F.3d at 344 n. 3;  *Morgan*, 104 Ohio St.

3d at 142, 818 N.E.2d at 1158. Consequently, the warden is correct, errors in the proceedings

that interfere with the prosecution of an Ohio R. App. P. 26(B) application to reopen are not

cognizable in federal habeas corpus "because such claims relate to a state civil matter, not the

custody of a defendant." *Roe*, 316 F.3d at 571.


        With an abundance of caution, though, the merits of Whatley's sixth ground will also be

examined. His complaint is not that he was not timely notified, but that the notice was

inadequate because he could not simply attach the postcard notice of dismissal of his application

to reopen appeal, but had to go through an additional step of obtaining a copy of the time-

stamped journalized entry that the state appellate court had created consistent with Ohio R. App.

P. 22(E). He contends that this was in violation of due process rights. The procedural protections

of due process, however, depend "on the extent to which an individual will be 'condemned to

suffer grievous loss.'" *Morrissey v. Brewer,* 408 U.S. 471, 481, 92 S.Ct. 2593, 2600, 33 L.Ed.2d

484 (1972)(quoting *Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 168, 71

S.Ct. 624, 646, 95 L.Ed. 817 (1951) (Frankfurter, J., concurring)). Analysis of a grievous loss

commences with whether the "nature of the interest" falls within the "liberty or property"

language of the Fourteenth Amendment. *Morrissey v. Brewer,* 408 U.S. at 481, 92 S.Ct. at 2600;

*Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972).  Ohio recognizes a

property interest in appeals as of right, but the extent of the property interest in lesser appeals is

unclear.  Compare *Atkinson v. Grumman Ohio Corp*., 37 Ohio St.3d 80, 523 N.E.2d 851

(1988)("The right to appeal, as it is defined in the Appellate Rules, is a property interest and a

litigant may not be deprived of that interest without due process of law."). Under the Rules of

Practice of the Ohio Supreme Court, appeals from the denial of applications to reopen appeal

under Ohio R. App. P. 26(B) in non-capital cases are categorized as "claimed appeals of right,"

as opposed to "appeals of right." See Ohio S.Ct. Prac. R. II §1(A)(1)-(2). However, there is more

at stake than the right to an appeal, it is Whatley's liberty. "A liberty interest is of course a

substantive interest of an individual." *Olim v. Wakinekona,* 461 U.S. 238, 250, 103 S.Ct. 1741,

1748, 75 L.Ed.2d 813 (1983)(quoting *Shango v. Jurich*, 681 F.2d 1091, 1100-1101 (7th

Cir.1982)).


     As the Supreme Court explained,  "[o]nce it is determined that due process applies, the

question remains what process is due. It has been said so often by this Court and others as not to

require citation of authority that due process is flexible and calls for such procedural protections

as the particular situation demands." *Morrissey v. Brewer,* 408 U.S. at 481, 92 S.Ct. at 2600.

Adequacy of notice corresponds with "[t]he fundamental requisite of due process of law" and

"the opportunity to be heard." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306,

313-14, 70 S.Ct. 652, 94 L.Ed. 865 (1950)(quoting *Grannis v. Ordean*, 234 U.S. 385, 394, 34

S.Ct. 779, 58 L.Ed. 1363 (1914)). "[T]he adequacy of a particular form of notice requires

balancing the 'interest of the State' against 'the individual interest sought to be protected by the

Fourteenth Amendment." *Jones v. Flowers*, 547 U.S. 220, 229, 126 S.Ct. 1708, 164 L. Ed. 2d

415(2006) (quoting *Mullane*, 339 U.S. at 314). In short, the issue is did the state court's notice

1:08 CV 1632                                     26

provide the prisoner with an adequate opportunity to argue his case on appeal. See *Albin v. Concord Dist. Court*, 2000 WL 1513719 at \*4 (D. N.H.). The answer is clearly affirmative.


What process is due Whatley or any litigant who appeals a matter is provided in the former version of Ohio R. App. P. 22(B) and 30(A). [8]  Appellate Rule 22(B) read, "[w]hen a decision is announced, the clerk shall give notice thereof by mail to counsel of record in the case." Appellate Rule 30 (A) reads, "[i]mmediately upon the entry of an order or judgment, the clerk shall serve by mail a notice of entry upon each party to the proceeding and shall make a note in the docket of the mailing."  These rules do not state that the clerk provide a copy of the journalized entry, but only "notice," which in this matter was supplied by postcard.  The state courts have found no reason to refrain from postcard notice, finding at most error in procedure as opposed to the postcard itself being deficient.  See *Defini v. City of Broadview Hts*., 76 Ohio App. 3d 209, 601 N.E.2d 199 (8 Dist. 1991)(postcard must be actually served, not just noted in the docket); *Wainey v. Hollymatic Corp.*, 1995 WL 248523 (Ohio App. 8 Dist.)(mere non-receipt of postcard insufficient to sustain Rule 60(B) motion).


In contrast, Federal Appellate Rule 36(b) requires, "[o]n the date when judgement is entered, the clerk must serve on all parties a copy of the opinion - or the judgment, if no opinion

---

[8] Ohio R. App. P. 22(B) was amended effective July 1, 2008, and no longer mimics Rule 30(A) concerning service, but now concerns only journalization.

1:08 CV 1632                                  27

was written- and a notice of the date when the judgement was entered." If this rule were

followed in Ohio, Whatley's grievance would not have arisen.


        Evaluating due process claims is not simply a matter of pointing out differences between

federal and state procedure. "The distinction between what is preferred and what is

unconstitutional must always be identified and never blurred. Federal judges who have the power

to delineate this distinction must be careful not to confuse 'our druthers' with principled

constitutional adjudication." *Finberg v. Sullivan,* 634 F.2d 50, 86 (3rd Cir. 1980). The U.S.

Supreme Court has been concerned with fairness of the notice. See *James v. U.S.*, 459 U.S. 1044,

103 S.Ct. 465, 74 L.Ed. 2d 615 (1982)(Brennan, J.)(criticizing harshness of Fed. App. R. 4(b)'s

time limits when prisoner through no fault of his own was unaware of denial of Rule 35 motion,

but denying *certiorari* due to other avenues of relief through Rule 60(b) and *coram nobis*.). The

Supreme Court in *Morrissey* urges a functional approach, reviewing the nature of the

government function and the private interest affected. *Morrissey*, 408 U.S. at 481, 92 S.Ct. at

2600. The government function of the state appellate court is to adjudicate the disputed issue and

provide notice of that adjudication that will allow the parties to timely appeal. The private

interest is Whatley's liberty. Borrowing from class action principles, notice "must provide

minimal procedural due process protection," with defendant provided "notice plus an

opportunity to be heard and participate in the litigation, whether in person or through counsel,"

" reasonably calculated, under all the circumstances, to apprise interested parties of the pendency

1:08 CV 1632                                           28

of the action and afford them an opportunity to present their objections." *Phillips Petroleum Co.*

*v Shutts,* 472 U.S. 797, 811, 105 S.Ct. 2965, 86 L.Ed.2d 628 (1985).


Whatley admits receipt of notice which apprised him of the state appellate court's ruling

and he admits that he knew of the right to appeal this decision to the Ohio Supreme Court.  His

only barrier was that the postcard itself was insufficient to document the state appellate court's

judgment for review by the Ohio Supreme Court. Whatley, though, does not establish that he

was denied the opportunity to appeal. He has not shown there were no state procedures for

obtaining a dated copy of the state appellate court's judgment entry form or that these procedures

were inadequate to provide the requisite judgment entry form in time perfecting his appeal to the

Ohio Supreme Court.  It follows then that the process the state appellate court provided was

functionally adequate to notify Whatley of the state appellate adjudication to permit him to

protect his liberty interest through a perfected notice of appeal to the Ohio Supreme Court.



**Ground No. 7:** *Disproportionate sentences:*

Whatley complains that Eighth Amendment proportionality was violated when his co-

defendants received lesser sentences than life imprisonment without parole despite the jury

finding that he was not the principal offender. The warden counters that this claim was presented

on direct appeal, but when Whatley's sentence was overturned, he did not include this claim in

1:08 CV 1632                                          29

his appeal following re-sentencing.  The warden correctly maintains that review of this ground is abandoned.


       Whatley raised his disproportionate sentence  argument  as the fifth assignment of error in the initial appeal. (See Appellant's Brief p.13, Warden's Ex. 6, ECF 10-8). The state appellate court found this argument became moot, after it determined that the trial court erred when it sentenced Whatley under the mandatory state sentencing rules that were subsequently determined to be unconstitutional in *State v. Foster*, 109 Ohio St. 3d 1, 845 N.Ed.2d 470, 2006-Ohio-856 (2006). Whatley repeated his disproportional sentencing  argument to the Ohio Supreme Court contending that he was entitled to proportionality review under former Ohio Rev. Code §2929.14(B) and that as a matter of federal law  *Roper v. Simmons*, 543 U.S. 551, 125 S.Ct. 1183, 161 L.Ed.2d 1 (2004) held that the Eighth Amendment prohibited execution of individuals who were under 18 years of age at the time of their capital crimes. (See Respondent's Ex. 13, ECF # 10-8). On his appeal following re-sentencing in November 2006, Whatley raised two assignments of error: (1), denial of due process by virtue of retroactive application of *State v. Foster* ; and (2), error due to failure to merge the gun specifications in sentencing. See *State v. Whatley*, 2008 WL 192490 (Ohio App. 8 Dist.). His Eighth Amendment proportionality claim was abandoned in his second appeal and the warden maintains that as a result, the Eighth Amendment claim was waived and Whatley has not asserted cause nor established prejudice form the alleged constitutional error.

1:08 CV 1632                                    30

The first part of the warden's argument is correct- the ground is moot.  Whatley has

abandoned this claim because it is his second sentence which at stake in his habeas petition. "A

federal court has no authority to render a decision upon moot questions or to declare rules of law

that cannot affect the matter at issue." *Bachman v. Bagley,* 487 F.3d 979, 981 (6th Cir.

2007)(quoting *Cleveland Branch , NAACP v. City of Parma*, 263 F.3d 513, 530 (6th Cir. 2001)).

Whatley's March 2005 sentence was vacated by the state appellate court leaving only his

incarceration upon  the November 2006 sentence. See *Pruitt v. Wilson*, 2008 WL 5378341, at

*11 (N.D. Ohio); *Huffman v. Brunsman,* 2008 WL 4925813, at *8 (S.D. Ohio); and see *Templar*

*v. Harrison*, 298 Fed.Appx. 763 (10th Cir. 2008)(petitioner's challenge to his death sentence

based on misinstruction of jury was rendered moot when the sentence was overturned and

petitioner was resentenced); *James v. Singletary,* 995 F.2d 187, 188 (11th Cir. 1993)(state

supreme court's decision to resentence petitioner rendered petitioner's federal habeas corpus

challenge to sentence moot). Whatley does not raise any actual injury traceable to his November

2006 to sustain a justiciable case or controversy . See *Templar*, *supra.* What is key is that

Whatley does not now contend that the state courts erred by remanding for resentencing. His

only sentencing argument, which is not moot, is the one raised in his eighth ground of retroactive

application of *State v. Foster* in the November 2006 resentencing.


The March 2005 sentence which Whatley challenged as disproportional under the Eighth

Amendment no longer presents an actual case or controversy and Whatley could not in any event

overcome the lack of a justiciable claim by presenting cause and prejudice although the warden

1:08 CV 1632                                    31

apparently believes that abandonment can be excused. Review is not barred due to a procedural

default but because the ground became moot upon resentencing and no such claim was raised in

relation to the November 2006 resentencing. [9]

**Ground No. 8:** *Retroactive application of State v Foster violated Due Process:*

The state appellate court rejected Whatley's "*ex post facto* argument" relying on *State v.*

*Foster*'s ruling that the abrogation of state sentencing provisions was applicable to all cases on

direct review. See *Whatley*, 2008 WL 192490 at *1(citing *State v. Mallette*, 2007 WL 530187,

2007-Ohio-715 (Ohio App. 8 Dist.)). [10]

---

[9]    In any event, as a matter of federal law, "[t]he Eighth Amendment, which forbids cruel and unusual
punishment, contains a 'narrow proportionality principle that 'applies to non-capital sentences.'" *Ewing v. California*,
538 U.S. 11, 20, 123 S.Ct. 1179, 1185, 155 L.Ed.2d, 144 (2003)(quoting *Harmelin v. Michigan*, 501 U.S. 957, 966-97,
111 S.Ct. 2680, 115 L.Ed.2d 836 (1981) (Kennedy, J., concurring in part and concurring in judgment)). However the
contours of this right "aren't clear" and "applicable only in the 'exceedingly rare' and 'extreme' case. *Lockyer v.*
*Andrade*, 538 U.S. 63, 73, 123 S.Ct. 1166, 1173, 155 L.Ed.2d 144 (2003) (quoting *Harmelin*, 501 U.S. at 1001). Had
Whatley preserved his proportionality argument, it would be unlikely that he could establish that the state court's
decision had been "contrary to" or an "unreasonable application" of clearly established Federal law commensurate with
28 U.S.C. §2254(d).

[10]   *State v. Foster* ordered prospective application to:

These cases and those pending on direct review must be remanded to trial courts for new sentencing
hearings not inconsistent with this opinion. We do not order resentencing lightly. Although new
sentencing hearings will impose significant time and resource demands on the trial courts within the
counties, causing disruption while cases are pending on appeal, we must follow the dictates of the
United States Supreme Court. Ohio's felony-sentencing code must protect Sixth Amendment principles
as they have been articulated

*Id.*, 109 Ohio St.3d at 31, 845 N.E.2d at 499.

1:08 CV 1632                                        32

Whatley maintains that he was denied due process when he was resentenced in November 2006 without the benefit of the former Ohio statutory restraints on judicial sentencing discretion which favored minimum and concurrent sentences. At the time Whatley was originally sentenced in 2005 the law of Ohio as set out in *State v. Comer*, 99 Ohio St.3d 463 (2003), upheld and strictly enforced statutory sentencing requirements which restrained the trial court's discretion for imposing more than the shortest prison term or consecutive sentences. On February 27, 2006, the Ohio Supreme Court in *State v. Foster*, 109 Ohio St.3d 1, 845 N.E.2d 470, 2006 - Ohio - 856 (2006), *cert. denied*, 549 U.S. 979 (2006), abrogated  *State v. Comer,* relying on  *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004) to  rule that Ohio's statutory sentencing plan was unconstitutional with respect to favoring minimum and concurrent sentences which required judicial fact-finding  sentences**.** In *Blakely v. Washington*, the Supreme Court reaffirmed that the Sixth Amendment's right to "public trial,  by an impartial jury" extended through the Fourteenth Amendment to state sentencing, so that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  *Blakely*, 542 U.S. at 301 (quoting *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000)).  What changed in *Blakely*  from *Apprendi* was the definition of "statutory maximum" sentence to "the maximum [the court] may impose *without* any additional findings." *Blakely v. Washington*, 542 U.S. at 303-304, 124 S.Ct. at 2537; and see *Cunningham v. California*, 549 U.S. 270, 127 S.Ct. 856, 860, 166 L.Ed.2d 856 (2007). In *U.S. v. Booker,*  543 U.S. 220, 125 S.Ct. 738,

1:08 CV 1632                                    33

160 L.Ed.2d 621 (2005), *Blakely*'s principles were extended to the Federal Sentencing Guidelines

requiring severance of the provision making the guidelines mandatory.**11**

Whatley's conviction was not yet final at the time of his appeals on direct review. See

*Griffith v. Kentucky*, 479 U.S. 314, 328, 107 S.Ct. 708, 93 L.Ed.2d 649 (1987).  His  sentence was

subject to review and remand, and it is ironic that on the initial appeal Whatley had sought re-

sentencing in light of *Blakely v. Washington*. See *Whatley*, 2006 WL 1351668 at * 7.

Following the abrogation of Ohio's legislature's restrictions on sentencing, defendants in

Ohio face the prospect of maximum sentences.[12] The result is that Whatley's re-sentencing is

---

[11]    The Ohio Supreme Court re-evaluated the state's sentencing scheme in light of the holdings of the U.S. Supreme Court in *Apprendi v. New Jersey,* 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435  (2000),  *Blakely v. Washington,* 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004), and *U.S. v. Booker*,  543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), and determined that Ohio's felony, sentencing plan is a "hybrid" of determinate and indeterminate sentencing, (*Foster*, 109 Ohio St.3d at 12), and, the court severed the determinate aspects of the system. *Id*. at 17.   Following the lead of state supreme court decisions in Indiana and New Jersey, (*Foster*, 109 Ohio St.3d at 27 n.98), the Ohio Supreme Court eviscerated § 2929.14(B)'s presumption in favor of a minimum term for offenders who had not served time in prison, and severed  §2929.14(E)'s judicial fact-finding requirements prior to imposing consecutive sentences.  *Id*. at 20. The Ohio Supreme Court struck down the statutory requirements that permitted judges to impose heightened sentences only after engaging in additional fact-finding found unconstitutional in *Blakely*.  *Foster,* at 19-20, 25.

[12]    Recently  the Ohio Supreme Court confronted the unresolved  issue of evaluating reasonableness of sentences post-*Foster* in *State v. Kalish,*  120 Ohio St.3d 23, 23, 896 N.E.2d 124, 126 , 2008-Ohio-4912 (2008):

        {¶ 1} The issue before us today is yet another remnant from our decision in *State v. Foster*, 109 Ohio St.3d 1, 2006-Ohio-856, 845 N.E.2d 470. In *Foster,* we severed the judicial-fact-finding portions of R.C. 2929.14, holding that "trial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, consecutive, or more than the minimum sentences." *Id.* at ¶ 100.

        {¶ 2} In so doing, we recognized that *Foster* would affect subsequent appellate review of sentencings, noting that "[t]he appellate statute R.C. 2953.08(G), insofar as it refers to the severed sections, no longer applies." *Id.* at ¶ 99.

1:08 CV 1632                                                34

subject to limited federal scrutiny under the Eighth Amendment (See *Solem v. Helm,* 463 U.S. 277, 103 S.Ct. 3001, 77 L.Ed.2d 637 (1983)), or as a matter of due process when judicial vindictiveness is present (See *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969)). Insofar as due process and its notions against *ex post facto* implications on re-sentencing are involved, Whatley had  "fair warning" of the potential consequences of his acts, including the death penalty or life sentences for murder. The state court decision was neither contrary to nor an unreasonable application of clearly established Federal law, but its brevity requires some explanation.


Whatley argued that resentencing without the shackles on judicial discretion of former Ohio sentencing guidelines was contrary to  the "inherent" "limitations on *ex post facto* judicial decision-making in the notion of due process." *Rogers v. Tennessee,* 532 U.S. 451, 460, 121 S.Ct. 1693, 1699, 149 L.Ed.2d 697 (2001)(citing *Bouie v. City of Columbia*, 378 U.S. 347, 84 S.Ct. 1697, 12 L.Ed.2d 894 (1964)). Whatley's due process contention acknowledges that the *ex post*

---

{¶ 3} Since *Foster*, the courts of appeals have adopted varied standards for reviewing trial court sentencing decisions, ranging from abuse of discretion, as in the instant case, to a standard that considers whether the sentence is clearly contrary to law. *State v. Burton*, 10th Dist. No. 06AP-690, 2007-Ohio-1941, 2007 WL 1196579.

{¶ 4} In applying *Foster* to the existing statutes, appellate courts must apply a two-step approach. First, they must examine the sentencing court's compliance with all applicable rules and statutes in imposing the sentence to determine whether the sentence is clearly and convincingly contrary to law. If this first prong is satisfied, the trial court's decision shall be reviewed under an abuse-of-discretion standard.

Immediately following this decison, however, one state appellate court has observed that *Kalish* is a plurality decision and declined to follow it. *State v. Harris*  2008 WL 4885049, 13 (Ohio App. 8 Dist.). So the state courts arguably have unfettered discretion to sentence to the statutory maximum penalty.

1:08 CV 1632                                             35

*facto* clause does not apply to the judiciary. See *Rogers v. Tennessee,* 532 U.S. at 460, 121 S.Ct. at

1699; *Marks v. United States*, 430 U.S. 188, 191, 97 S.Ct. 990, 51 L.Ed.2d 260 (1977). However,

he relies on *Dale v. Haeberlin*, which interpreted *Bouie* and *Marks* to extend to sentencing and

held:

> We hold that the constitutional due process protections, like *ex post facto*
> protections, do extend to proscribe judicially enforced changes in interpretations of
> the law that unforeseeably expand the punishment accompanying a conviction
> beyond that which an actor could have anticipated at the time of committing a
> criminal act. . . .  The federal courts of appeals have universally suggested that the
> right to due process prevents judicially wrought retroactive increases in levels of
> punishment in precisely the same way that the *ex post facto* clause does when the
> changes are produced by legislation. Rather than reading *Bouie* and *Marks*
> narrowly, circuit courts have typically echoed language in *Bouie* suggesting that "a
> state supreme court is barred by the due process clause from achieving by judicial
> construction a result which a state legislature could not obtain by statute."

*Dale v. Haeberlin,* 878 F.2d 930, 934 (6th Cir.1989).

Nevertheless, the Sixth Circuit upheld the sentence imposed on Dale since it was within the

statutorily allowable range at the time of the offense. *Dale*, 878 F.2d at 935. ("At the time Dale

decided to rob the gas station, he was on notice that he could not only be prosecuted for an armed

robbery but also that such charge would be subject to an enhanced sentence (twenty years to life) if

he was convicted.").  Due process considerations over retroactive application of new law on re-

sentencing rest simply on whether the sentence imposed on resentencing was within the court's

power at the time of the offense. See *Johnson v. United States*, 529 U.S. 694, 696, 702-03, 120

S.Ct. 1795, 1798, 1802, 146 L.Ed. 2d 727 (2000). Restated, "[t]he Ex Post Facto clause 'forbids

the imposition of punishment more severe than the punishment assigned by law when the act to be

1:08 CV 1632                                        36

punished occurred.'" *United States v. Duane*, 533 F.3d 441, 445 (6th Cir. 2008) (quoting *Weaver v.*

*Graham*, 450 U.S. 24, 30, 101 S.Ct. 960, 67 L.Ed.2d 17 (1981)).


Due process essentially requires only "fair warning" of the penalty before sentencing, and

*Miller v. Florida*, 482 U.S. 423,  107 S.Ct. 2446, 96 L.Ed.2d 351 (1987), does not add anything to

this principle contrary to Whatley's argument. *Miller* is a decision rooted in the *ex post facto*

clauses of §9 and §10 of Article I of the U.S. Constitution where statutory sentencing guidelines

were amended and retroactively applied to  increase the sentence.   *Miller* ruled that a state cannot

give retroactive effect to a modification of its sentencing guidelines when the result will increase

the legal consequences for the crime completed before the modification's effective date. *Id.*


*Miller,* though, did not address the consequences of a state supreme court's abrogation of

state sentencing guidelines The Sixth Circuit  has stated with regard to the Federal Sentencing

Guidelines that they operated in a manner similar to statutes when their application was

mandatory. See *United States v. Barton*, 455 F.3d 649, 655 n. 4 (6th Cir. 2006), *cert. denied*, 549

U.S. 1087 (2006). However once these guidelines became advisory, and modifications to them no

longer necessarily resulted in an increased sentence, then they no longer were statutory equivalents

and the *ex post facto* clause itself was no longer implicated. *Id.* Thus, the concerns over arbitrary

and vindictive legislative acts which is inherent in *ex post facto* clause considerations dissipated,

leaving behind only due process concerns over notice to defendants of illegal activity and its

1:08 CV 1632                                      37

consequences.  *Id.*  The U.S. Supreme Court itself has no qualms over broad judicial discretion

under the Sixth Amendment, and has offered several examples of how state courts have

compensated for Sixth Amendment shortcomings by " permit[ting] judges genuinely 'to exercise

broad discretion ... within a statutory range,'  which, 'everyone agrees,' encounters no Sixth

Amendment shoal." *Cunningham v. California,* 549 U.S. 270, 294, 127 S.Ct. 856, 871, 166

L.Ed.2d 856 (2007).  In other words,  "the defendant has no substantive right to a particular

sentence within the range authorized by statute." *Gardner v. Florida,*  430 U.S. 349, 358, 97 S.Ct.

1197, 1205, 51 L.Ed.2d 393 (1977);  *Townsend v. Burke,*  334 U.S. 736, 741, 68 S.Ct. 1252, 1255,

92 L.Ed.2d 1690 (1948)(There is no constitutional violation when the state court imposes a

sentence "within the limits set by the statute."). [13] Consequently, when the legislatively-imposed

state guidelines evaporate, the constitution does not require the state courts to create an equivalent

replacement, or enforce these guidelines for the sake of leniency.


       This principle is exemplified by Federal defendants who under  similar circumstances

following *United States v. Booker*, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005) were

resentenced without guideline restrictions having mandatory effect. See *United States v. Barton*,

455 F.3d 649, 652 (6th Cir. 2006), *cert. denied*, 549 U.S. 1087 (2006). Retroactive application of

*Booker* did not violate due process. *Id.*; *United States v. Sexton*, 512 F.3d 326, 331 (6th Cir. 2008);

and see *Schriro v. Summerlin*, 542 U.S. 348, 351, 124 S.Ct. 2519, 2522, 159 L.Ed.2d 442 (2004)

---

[13]   This is not to demean the protection under due process against judicial vindictiveness upon resentencing.
See *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969), overruled in part on other grounds
by *Alabama v. Smith*, 490 U.S. 794, 803, 109 S.Ct. 2201, 104 L.Ed.2d 865 (1989).

1:08 CV 1632                                              38

(When a decision of the Supreme Court "results in a 'new rule' that rule applies to all criminal

cases still pending on direct review."). There **is** no guarantee that a more lenient sentence would be

imposed on remand under *Booker*, **as** the U.S. Supreme Court observed:

> In *Booker*'s wake, it was common for newly convicted defendants to appeal their
> sentences, claiming that they received enhancements that they would not have
> received under the advisory guidelines. Many of those cases were remanded for
> resentencing, and **some defendants wound up with even longer sentences on
> remand**. See, e.g., *United States v. Singletary*, 458 F.3d 72, 77(CA2) (affirming a
> sentence lengthened by 12 months following a *Booker* remand), *cert. denied*, 549
> U.S. 1047, 127 S.Ct. 616, 166 L.Ed.2d 457 (2006); *United States v. Reinhart*, 442
> F.3d 857, 860-861 (C.A.5 2006) (affirming a sentence lengthened from 210 months
> to 235 months following a *Booker* remand) (emphasis supplied).

> *Greenlaw v. U.S.*, 554 U.S.-, 128 S.Ct. 2559, 2576 n.2, 171 L.Ed.2d 399 (2008).

In short, Whatley cannot have it both ways.  While he could complain about denial of his

Sixth Amendment right to jury trial with regard to *Blakely v. Washington*, in his initial sentence, he

has no constitutional grounds on which to base his dissatisfaction over  resentencing conducted

consistent with *Blakely*.

### *CONCLUSION AND RECOMMENDATION*

1:08 CV 1632                                    39

Federal review of this petition is foreclosed by procedural bar from the state courts'

application of adequate and independent state procedural rules absent Whatley's demonstration of

"cause and prejudice" to excuse the procedural default or establishing actual innocence in regard to

the first, fourth, and seventh grounds. With respect to those grounds and the remaining grounds,

petitioner has not demonstrated that he is in custody pursuant to a judgment of the state court

which resulted in a decision that was contrary to or involved an unreasonable application of

Federal law as determined by the Supreme Court of the United States or was the result of a

decision based on an unreasonable interpretation of the facts in light of the evidence in the State

court proceeding.  See 28 U.S.C. §2254(d)(1) and (2).  There has been no demonstrated need for

an evidentiary hearing.  It is recommended that this application for habeas corpus be denied.




                                    s/James S. Gallas
                              United States Magistrate Judge

Dated: June 4, 2009


        *ANY OBJECTIONS* to this Report and Recommendation must be filed with the Clerk of
Court within ten (10) days of mailing of this notice.  Failure to file objections within the specified
time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See*, *United States v.
Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985).