# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| DWIGHT WHATLEY | ) | CASE NO.  1:08CV1632 |
| | ) | |
| PETITIONER, | ) | JUDGE SARA LIOI |
| | ) | |
| vs. | ) | |
| | ) | MEMORANDUM OPINION |
| | ) | |
| | ) | |
| KEITH SMITH, WARDEN | ) | |
| | ) | |
| | ) | |
| RESPONDENT. | ) | |

This action is before the Court upon the Report and Recommendation of Magistrate Judge James S. Gallas. (Doc. No. 16.) Petitioner Dwight Whatley (Petitioner) has filed objections to the Report. (Doc. No. 18.) Respondent Keith Smith (Respondent) did not file a response. For the reasons that follow, the Report and Recommendation is **ACCEPTED**. Petitioner's application for a writ of habeas corpus (Doc. No. 1) is **DENIED**.

## I.

### INTRODUCTION

Because petitioner objected only to those portions of the Magistrate Judge's Report and Recommendation addressing the default of certain issues and the notice provided by the clerk of courts, the remainder of the Report—including its account of the factual and procedural history of the case—is hereby accepted as written. Thus, the

Court will only provide a brief review of the facts, as found by the state appellate court, sufficient to provide context for the asserted objections.

Petitioner was charged in connection with his involvement in a robbery of a delicatessen/convenience store. At trial, store employee Carolyn Pitts testified that Petitioner, someone with whom she was previously familiar, and four other individuals entered the store and demanded that all present in the store lay on the floor and be bound. While she saw Petitioner brandishing a shotgun, Pitts testified that she observed one of the other men shoot and kill the store owner and another store employee. Pitts, herself, was also shot by one of the other assailants, but she did not receive a fatal wound.[1] *State v. Whatley*, 2006 WL 1451668, at ¶¶ 5-10 (Ohio App. Ct. 8th Dist. May 18, 2006).

Petitioner was indicted on seventeen counts, including multiple counts for aggravated murder, each with firearm specifications, felony murder specifications, mass murder specifications and murder to escape prosecution specifications, attempted aggravated murder, aggravated burglary, aggravated robbery, and kidnapping. The last four offenses also carried firearm specifications. On March 11, 2005, a jury convicted Petitioner on four counts of aggravated murder, two counts of attempted aggravated murder, two counts of aggravated burglary, six counts of aggravated robbery and three counts of kidnapping, all with firearm specifications. At the penalty phase, the jury recommended sentences on the capital offenses of life without the possibility of parole. Petitioner also received an additional 90 years imprisonment to be served consecutive to

---

[1] At trial, Pitts testified that she pleaded with Petitioner to spare her life. Petitioner informed Pitts that he would have to kill her because she recognized him. *Whatley, infra.*

the life sentences for his convictions on the lesser offenses, and 21 years to be served before and consecutive to the life sentences for the firearm specifications.

On direct appeal, Petitioner challenged both his sentences and the underlying convictions. The state appellate court affirmed his convictions, but reversed his sentences and remanded for resentencing in light of the ruling in *State v. Foster*, 109 Ohio St. 3d 1 (2006). At resentencing, Petitioner was, once again, sentenced to the same term of imprisonment. Following resentencing, Petitioner unsuccessfully sought to reopen his appeal. There is no dispute that Petitioner has exhausted his state court remedies.

The instant petition brought pursuant to 28 U.S.C. § 2254 followed on July 8, 2008. (Doc. No. 1.) In his application for habeas relief, Petitioner raised a number of challenges to his convictions and sentence, including assignments of errors addressing the trial court's failure to conduct a hearing on Petitioner's motion to voir dire the State's eyewitness, the ineffectiveness of appellate counsel in failing to raise misconduct by the prosecutor and the trial court's failure to follow proper procedure for instructing the capital jury, and the denial of due process when the clerk of courts failed to provide Petitioner with a copy of the journal entry.[2]

In his Report and Recommendation, the Magistrate Judge determined that Petitioner had procedurally defaulted on his first assignment of error, claiming that the trial court erred in failing to conduct voir dire of the State's eyewitness, as well as his

---

[2] Petitioner also raised several other assignments of error in his petition. Petitioner does not take issue with the Magistrate Judge's recommended disposition of these other assignments of error.

fourth assignment of error, which challenged the effectiveness of appellate counsel for failing to raise issues of prosecutorial misconduct and perceived errors in instructing the death qualified jury. The Magistrate Judge also concluded that Petitioner's sixth assignment of error, which challenged the clerk of court's use of a postcard to provide notice of the decision denying Petitioner's motion to reopen his appeal, was not cognizable in federal habeas corpus, and that, even if it was properly brought in a habeas proceeding, any such error did not rise to the level of a constitutional violation. Ultimately, the Magistrate Judge recommended that the petition be denied in its entirety.

## II.

## STANDARD OF REVIEW

Rule 8(b) of the Rules Governing Section 2254 Cases in the United States District Court provides, "[t]he judge must determine *de novo* any proposed finding or recommendation to which objection is made. The judge may accept, reject, or modify any proposed finding or recommendation."

With respect to challenges to the determinations made by the state courts in Petitioner's case, this Court has a very limited scope of review. Under § 2254(d) of the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Congress enacted a rebuttable presumption that a federal court may not grant habeas relief from a state court conviction if the last state court adjudicated "on the merits" the same federal law question that is presented to the federal court. Congress further created two exceptions to that bar. Specifically, a federal court may grant habeas relief where the state court adjudication is either "contrary to" or "involved an unreasonable application of" settled federal law, as

4

decided by the United States Supreme Court. 28 U.S.C. § 2254(d)(1).

The Supreme Court, in *Williams* v. Taylor, 529 U.S. 362, 412-13 (2002),

provided the following guidance to district courts applying the two exceptions set forth in

§ 2254(d)(1):

> Under the "contrary to" clause, a federal habeas court may grant the writ if
> the state court arrives at a conclusion opposite to that reached by this
> Court on a question of law or if the state court decides a case differently
> than this Court has on a set of materially indistinguishable facts. Under the
> "unreasonable application" clause, a federal habeas court may grant the
> writ if the state court identifies the correct governing legal principle from
> this Court's decisions but unreasonably applies that principle to the facts
> of the prisoner's case.

Where a ruling in state court is "on the merits," this Court must give "deference to the

state court." *McKenzie v. Smith*, 326 F.3d 721, 726 (6th Cir. 2003).

## III.

## LAW AND ANALYSIS

### A.        Procedural Default

As previously discussed, the Magistrate Judge recommended that

Petitioner's first assignment of error be dismissed because it was procedurally defaulted.

Reasons of federalism and comity generally bar federal habeas review of "contentions of

federal law […] not resolved on the merits in the state proceeding due to [a petitioner's]

failure to raise them there as required by state procedure." *Wainwright v. Sykes*, 433 U.S.

72, 87 (1977). When a petitioner has defaulted on a federal claim:

> federal habeas review of the claim is barred unless the prisoner can
> demonstrate cause for the default and actual prejudice as a result of the
> alleged violation of federal law, or demonstrate that failure to consider the
> claims will result in a fundamental miscarriage of justice.

5

*Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

If the state argues that a petitioner has procedurally defaulted, the court must conduct a four-step analysis to determine whether the petitioner has indeed defaulted and, if so, whether the procedural default may be excused:

> First, the court must determine that there is a state procedural rule that is applicable to the petitioner's claim and that the petitioner failed to comply with the rule. […] Second, the court must decide whether the state courts actually enforced the state procedural sanction. […] Third, the court must decide whether the state procedural forfeiture is an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. […] This question generally will involve an examination of the legitimate state interests behind the procedural rule in light of the federal interest in considering federal claims. [… if] the court determines that a state procedural rule was not complied with and that the rule was an adequate and independent state ground, then the petitioner must demonstrate […] that there was "cause" for him not to follow the procedural rule and that he was actually prejudiced by the alleged constitutional error.

*Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). *See Buell v. Mitchell*, 274 F.3d 337, 348 (6th Cir. 2001). To establish cause, a petitioner must present a substantial reason to excuse his procedural default. *Rust v. Zent*, 17 F. 3d 155, 161 (6th Cir. 1994). The prejudice component requires a showing that the petitioner suffered a real and "substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Murray,* 477 U.S. at 494. *See United States v. Frady*, 456 U.S. 152, 170 (1982).

A default will also be excused if the petitioner demonstrates that not excusing the default "will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750. A "fundamental miscarriage of justice" occurs only in the "extraordinary case where a constitutional violation has probably resulted in the conviction of one who

6

is actually innocent." *Murray v. Carrier,* 477 U.S. at 495-96. The ineffective assistance of counsel may constitute cause for a procedural default, so long as that claim is not itself procedurally defaulted. *Edwards v. Carpenter*, 529 U.S. 446, 451-52 (2000) (citing *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986)).

    With respect to the first assignment of error, Petitioner asserts that the trial court erred in failing to conduct a hearing on his counsel's motion to voir dire the State's eyewitness. During the trial, defense counsel agreed to hold the motion in abeyance until the conclusion of the trial. The motion was not, however, renewed at the end of the trial. The state appellate court found that the issue was waived pursuant to Ohio's contemporaneous objection rule, and the Magistrate Judge concluded this rule constituted an adequate and independent ground on which the state can rely to foreclose review of a federal constitutional claim. The Magistrate Judge also found that Petitioner did not raise trial counsel's failure to renew the motion during the state appellate process, and, as such, could not rely on ineffective assistance of counsel as "cause" to excuse the procedural default. (Report at 7.)

    Petitioner does not take issue with the Magistrate Judge's finding of default, or his failure to find cause based upon ineffective assistance of counsel. Instead, Petitioner insists that the Magistrate Judge should have determined that the alleged constitutional violation "has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 495-96. Specifically, Petitioner insists that he had come forward with "newly discovered evidence" that demonstrates that, had it been offered at

trial, "no reasonable juror would have found Petitioner guilty beyond a reasonable doubt." (Objections at 1, citing *Schlup v. Delo*, 513 U.S. 298, 324 (1995)).

The record in the state appellate court established that the police that responded to the scene of the shooting eventually followed "tracks left in the snow" that led to a residence where officers discovered evidence that ultimately led to the arrest of Petitioner and his co-defendants. *See Whatley*, 2006 WL 1351668, at ¶ 12. Petitioner notes that a detective testified at trial that the officers found three distinct sets of footprints in the snow leading from the crime scene. (Objections, Ex. 1, Trial TR at 295.) He further observes that "the prosecution office went on to convict four other males after Petitioner's trial, two by way of guilty pleas." (Objections at 1.) According to Petitioner, had his trial taken place after his co-defendants had been adjudicated, and had the jury known that four other individuals had already been convicted of the crimes, the evidence of only three snow tracks would have precluded the jury from finding a fifth individual guilty of the crimes. (*Id*. at 2.)

To avoid procedural default based on a claim of actual innocence, Petitioner must support his allegations "with new reliable evidence […] that was not presented at trial" either because it was wrongly excluded or unavailable at the time of trial. *Schlup*, 513 U.S. at 327. Establishing actual innocence requires a showing of factual innocence, not mere legal insufficiency. *See Bousley v. United States*, 523 U.S. 614, 623 (1998).

Petitioner's newly discovered evidence (if it can be characterized as such), namely the conviction of four other individuals and evidence of only three tracks in the

snow, does not excuse his default. Of course, the fact that the police found three tracks --
a fact presented to Petitioner's jury -- does not foreclose the possibility that more than
three individuals were involved in the robbery, with one or more of the individuals
leaving the scene another way. More to the point, it does not establish that Petitioner,
himself, was actually innocent of the crimes.

       Further, there was overwhelming evidence offered at trial that Petitioner
was involved in the robbery that led to the shooting deaths. Store employee Pitts
positively identified Petitioner, someone with whom she was previously familiar, as
being present during and participating in the robbery. *Whatley*, 2006 WL 1351668, at ¶ 6.
Another witness testified that Petitioner left a shotgun in his possession, and returned the
day of the robbery with other men to recover the shotgun. When the witness checked in
on the men, he noticed that they had numerous hand guns. *Id*. at ¶ 13. Still another
witness testified that the night of the robbery, Whatley and other men were seen with a
metal box that contained approximately $3,500.00 in cash. *Id*. at ¶ 15. The overwhelming
evidence of Petitioner's guilt precludes a finding that his trial probably resulted in the
conviction of one who is actually innocent. *See e.g., United States ex rel. Lopez v.
Uchtman*, 2007 U.S. Dist. LEXIS 6058 (N.D. Ill. Jan. 24, 2007) (procedural default not
excused where eyewitness testimony represented overwhelming evidence of the
petitioner's guilt); *Brooks v. Dormire*, 2008 U.S. Dist. LEXIS 58802 (E.D. Mo. Aug. 4,
2008) (same). As such, Petitioner's first objection is **OVERRULED**.

**B.**        <u>**Postcard Notice**</u>

The Magistrate Judge also recommended that the fourth assignment, which addressed the ineffective assistance of appellate counsel, be dismissed because it was procedurally defaulted. In reaching this conclusion, the Magistrate Judge relied upon the fact that Petitioner failed to perfect an appeal in the Ohio Supreme Court from the judgment of the state appellate court denying his application to reopen his appeal. In particular, Petitioner failed to append a "[d]ate-stamped copy of the court of appeals opinion and judgment entry being appealed" as described in Ohio S.Ct. Prac. R. III, ¶ 1(D).

In his sixth assignment of error, Petitioner complains that the reason he was unable to perfect his appeal in the Ohio Supreme Court was that the clerk's office for the Eighth District Court of Appeals neglected to send him a copy of the appellate court's decision denying his application to reopen his appeal. Petitioner maintains that the state appellate clerk's failure to provide him with a copy of the decision deprived him of due process. Because the issues in assignments four and six involving the notice and the default are interrelated, the Court shall address them together.

In a decision dated October 31, 2006, the Eighth District Court of Appeals denied Petitioner's motion, brought pursuant to Ohio R. App. P. 26(B), to reopen his appeal. The state appellate court utilized a postcard to notify Petitioner of the decision. There is no dispute that a postcard notice may not be used to support an appeal from the decision of an Ohio court. See Ohio S.Ct. Prac. R. III, ¶ 1(D). Petitioner recognized as

much, and sent a letter to the Office of the Public Defender, dated November 6, 2009, requesting a copy of the appellate court's ruling. (Petition, Ex. B.)

Having not heard from the Public Defender's Office, Petitioner attempted to file his appeal with the Ohio Supreme Court. In a letter dated December 11, 2006, Petitioner was advised by the Ohio Supreme Court that a date-stamped copy of the Eighth District's decision was needed before he could perfect his appeal. (Ex. C-2.) Petitioner was unable to timely satisfy the filing requirements and, ultimately, was unable to appeal the denial of his motion to reopen his appeal.

With respect to Petitioner's fourth ground for relief, the Magistrate Judge determined that Petitioner's failure to present his federal grounds for relief to the State's highest court constituted a procedural bar for raising the issues in a federal habeas petition. In support of his recommendation, the Magistrate Judge noted that Petitioner was aware of the filing requirement, but failed to make a request to the state appellate court to obtain a copy of the decision at issue. (Report at 19-20.) As for the sixth ground, the Magistrate Judge urged a finding that the claim that the clerk's office erred in providing a postcard notice of the appellate court's decision was not cognizable in a federal habeas action. (*Id*. at 24.) The Magistrate Judge also found that, had the claim been properly before this Court, it would not have demonstrated Petitioner was denied due process because he received notice of the decision and was apprised of his right to seek further review in the Ohio Supreme Court. (*Id*. at 27-28.)

In his objections to the Report recommendation that the fourth assignment of error be rejected, Petitioner complains that he is not a practicing attorney, and that he

11

should not be blamed for failing to request a copy of the Eighth District's judgment because he is proceeding in this matter pro se. Although a pro se prisoner is entitled to have his petition liberally construed, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), a pro se litigant "must follow the same rules of procedure that govern other litigants." *Green v. Dorrell,* 969 F.3d 915, 917 (10th Cir. 1992). *See Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996). The fact remains that Petitioner was aware that he needed to append to his appeal a copy of the full opinion and judgment entry of the state appellate court, but failed to do so. Nor did he seek an extension of time when he was advised by the Ohio Supreme Court that it was not sufficient to append the postcard notice of the Eighth District's decision.

Petitioner's failure to perfect his appeal from the Eighth District's decision constitutes a procedural bar to raise the ineffective assistance of appellate counsel. That Petitioner was proceeding pro se does not serve to establish cause to excuse the default. As such, Petitioner's second objection, related to his fourth assignment of error, is **OVERRULED**.

In his final objection, Petitioner maintains that the Magistrate Judge erred in recommending to this Court that it find that the postcard notice of the appellate court's decision did not violate Petitioner's due process rights. In particular, Petitioner complains that while all of the attorneys associated with his state court proceedings received copies of the full journal entries entered in his action, he only received a postcard notice. According to Petitioner, he never had meaningful access to the full journal entry denying his motion to reopen his appeal and, therefore, was deprived of due process.

12

Petitioner's objection suffers from two fatal flaws. First, as the Magistrate Judge properly found, the state appellate clerk of court's use of a postcard to notify Petitioner of the ruling on his motion to reopen his appeal does not raise a claim that is cognizable in a federal habeas petition. The Sixth Circuit has held that there is no federal habeas review available for clerical errors in Ohio post-conviction proceedings because such proceedings relate to state civil matters. *See Roe v. Baker*, 316 F.3d 557, 571 (6th Cir. 2002) (citing *Kirby v. Dutton*, 794 F.2d 245, 247 (6th Cir. 1986)). Further, the Sixth Circuit has treated motions to reopen appeals under Ohio R. App. P. 26(B) as post-conviction proceedings, for which no right to counsel is constitutionally required. *See Lopez v. Wilson*, 426 F.3d 339, 352-53 (6th Cir. 2005). The Ohio Supreme Court has also determined that the Rule 26(B) procedure is part of a collateral post-conviction review. *Morgan v. Eads*, 104 Ohio St. 3d 142 (2004). Because the Rule 26(B) motion constituted a civil matter, no right to federal habeas review flows from it. *See Roe*, 316 F.3d at 571.

Petitioner is also incorrect in assuming that he may rely on Fed. R. App. P. 36 to support his argument that he was entitled to receive a copy of the Eighth District's full decision as notice under Ohio R. App. 30(A). Federal Rule of Appellate Procedure 36(B) requires that "[o]n the date when judgment is entered, the clerk must serve on all parties a copy of the opinion—or the judgment, if no opinion was written—and a notice of the date when the judgment was entered." Fed. R. App. P. 36(B). No such rule exists in the Ohio Rules of Appellate Procedure, which were the rules that governed Petitioner's state court appeals. Rather, Ohio R. App. P. 30(A) merely requires the clerk to provide

notice of any order or judgment. Petitioner received the notice to which he was entitled under the Ohio Rules of Appellate Procedure.

Further, Petitioner admits this notice adequately apprised him of the fact that the Eighth District had denied his motion to reopen his appeal. Nor does deny (and the record supports a finding) that he knew of his right to appeal the decision to the Ohio Supreme Court. Petitioner was, therefore, afforded what due process requires: namely, notice and an opportunity to be heard. Due process requires nothing more. *Cinema '84 v. Comm'r*, 412 F.3d 366, 373 (2nd Cir. 2005). *See Matthews v. Eldridge*, 424 U.S. 319, 333 (1976) (the fundamental requirements of procedural due process are notice and an opportunity to be heard); *E. Paralyzed Veterans Ass'n v. Sec'y of Veterans Affairs*, 257 F.3d 1352, 1359 (Fed. Cir. 2001) (same); *Revis v. Meldrum*, 489 F.3d 273, 284 (6th Cir. 2007) (same).

Indeed, it is clear from Petitioner's letter to the Ohio Public Defender that he had actual knowledge that he needed to obtain a copy of the decision in order to pursue an appeal in the Ohio Supreme Court, but failed to request a copy from the clerk and failed to seek additional time in which to perfect his appeal.[3] (Petition, Ex. C-1, Plaintiff stated: "I'm very much aware of the fact that the Opinion and/or Judgment Entry is to be attached to the Memorandum in Support according to the Ohio Supreme Court rules.") This actual notice precludes the finding of a due process violation. *See e.g.,*

---

[3] Petitioner was reminded of his right to appeal, the time for taking such an appeal, and the statutory requirement of appending a copy of the Opinion or Judgment Entry by the Ohio Supreme Court in a letter dated December 11, 2006  refusing to file his appeal. (Ex. C-2.)

14

*Samuels v. Meriwether*, 94 F.3d 1163, 1167 (8th Cir. 1996) ("Because the Samuels had actual notice that the City intended to condemn the building, there was no procedural due process violation.")

## IV.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Magistrate Judge's Report and Recommendation (Doc. No. 16) is **ACCEPTED**, and the petition for a writ of habeas corpus (Doc. No. 1) is **DENIED**. This Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from the decision would be frivolous and could not be taken in good faith, and that there is no basis upon which to issue a certificate of appealability. 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b). This action is **DISMISSED**.

**IT IS SO ORDERED**.

Dated: November 30, 2009

**HONORABLE SARA LIOI**
**UNITED STATES DISTRICT JUDGE**